UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODORE ALAN MUTTSCHELER,

        Plaintiff,

Case No. 1:12-cv-1221

Hon. Robert J. Jonker

v.

MICHAEL MARTIN,

        Defendant.

                                /

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant's motion for summary judgment (docket no. 8) and plaintiff's "motion for summary judgment and response to defendant Martin's motion for summary judgment" (docket no. 11)

      **I.**      **Plaintiff's complaint**

Plaintiff filed his complaint on November 5, 2012, claiming that defendant, Michael Martin, Special Activities Coordinator at the Michigan Department of Corrections (MDOC) violated his rights under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 *et seq*. Compl. at p. 1. Plaintiff's allegations are summarized as follows. In 2005, while in prison, plaintiff began studying the teachings of the United Church of God (UCG), which he describes as "a Christian sect which requires its members to follow God's divinely inspired law.". *Id.* at ¶ 8. "Plaintiff eventually concluded that as a member of UCG, he must follow a kosher diet, as kosher is a central tenet." *Id.* After reaching this conclusion, plaintiff notified the MDOC through institutional correspondence

(kite) that he was an active member of UCG and requested to be placed on a kosher diet. *Id.* The kite was sent on or about April 4, 2012 and addressed to Chaplain Duby at the Oaks Correctional Facility.

In Count I plaintiff alleged after more than 30 days passed from the date he sent the kite he "acted in his individual capacity as a fact finder within an independent administrative process with Mr. Martin to secure a preponderance of 'proof', 'evidence', or otherwise regarding Mr. Martin's denial of Plaintiff's request for placement on the Kosher Diet." *Id.* at ¶ 9. After his so-called "independent administrative process," which can be described as a collection of documents written in pseudo-legalese citing Michigan criminal law and Michigan's version of the Uniform Commercial Code, plaintiff determined that defendant defaulted on plaintiff's "first charge of Wilful Neglect of Duty (MCLA 750.478) and Deliberate Indifference against Defendant Michael Martin." *Id.* at ¶¶ 9-14.

In Count II, plaintiff alleged "that upon completion of his independent administrative process, he was able to establish on the record the settlement of the claim between the parties after obtaining a means to determine the nature and cause of Defendant's actions up to and including default." *Id.* at ¶ 15. In this count, plaintiff also alleged his efforts to a exhaust a grievance with the Michigan Department of Corrections (MDOC). *Id.* at ¶¶ 16-18. Plaintiff identified the MDOC grievance as ECF 2012-08-2543-27b ("2543"). *Id.* at ¶¶ 16-18; Grievance no. 2543 (docket no. 1-1 at pp. 25, 30-32, 34). Plaintiff appears to allege that the MDOC defaulted because it failed to respond to his Step III appeal within thirty days after he filed it. Compl. at ¶ 18. Plaintiff's complaint did not reference an MDOC Step III response, because as discussed below, the MDOC

did not resolve the Step III appeal until January 7, 2013, more than two months after plaintiff filed his complaint.

In his claim for relief, plaintiff appears to contend that because defendant did not participate in plaintiff's "independent administrative process," defendant stipulated to plaintiff's claims and to damages in the amount of $2,000.00 (i.e., "Mr. Martin's acceptance of Plaintiff's presentment by his silence constitutes a settlement agreement, valued at $2,000.00, where Mr. Martin accepted Plaintiff's offer by rendering performance rather than promising to perform. Therefore, a unilateral contract was made."). *Id.* at ¶¶ 21-24. Plaintiff seeks declaratory relief that defendant violated his rights under the First Amendment and RLUIPA, award "nominal damages in the amount agreed upon between the parties, i.e., $2000.00", punitive damages and "further relief." *Id.* at p. 6.

Defendant has moved for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies. Plaintiff has filed a combined response and cross-motion for summary judgment, claiming that he met the exhaustion requirement.

## II. The motions for summary judgment

### A. Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

3

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after

5

the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. **Plaintiff did not properly exhaust a grievance prior to filing suit**

#### a. **Plaintiff's "independent administrative process"**

To the extent that plaintiff relies on his "independent administrative process" to demonstrate exhaustion, his claim is frivolous. For purposes of exhaustion under the PLRA, plaintiff must comply with prison grievance procedures. *Jones*, 549 U.S. at 218.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits). . . Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Woodford*, 548 U.S. at 90-91 (internal quotation marks and citations omitted). Plaintiff cannot make up his own imaginary administrative process to satisfy the PLRA's exhaustion requirement.

6

Similarly, he cannot rely on this fanciful administrative process to make factual determinations binding on other persons: e.g., that defendant was guilty of a state criminal statute[1]; that defendant was guilty of deliberate indifference; or that defendant stipulated to pay him $2,000.00. In short, all of these claims are frivolous.

The gist of plaintiff's complaint is that he was denied a religious diet in violation of the First Amendment and RLUIPA. The court will address the issue of exhaustion based upon those two claims.

### b. MDOC grievance

Plaintiff has identified the operative MDOC grievance as no. 2543. *See* Compl. at ¶¶ 16-18; Grievance no. 2543 (docket no. 1-1 at pp. 25, 30-32, 34); Grievance no. 2543 (docket no. 12-4). Without providing any citation, plaintiff contends that the Step III appeal was exhausted when the MDOC failed to address it within 30 days after filing. The MDOC, however, addressed the Step III appeal on January 7, 2013. *See* Step III Response (docket no. 12-4 at p. 15). In his motion for summary judgment, defendant identified this grievance as having been exhausted after plaintiff filed this lawsuit. *See* MDOC Prisoner Step III Grievance Report (docket no. 9-3).

The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless

---

[1] The cited criminal statute, M.C.L. § 750.478 ("Willful neglect of duty by a public officer or employee or person holding public trust") provides that "When any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, constitutes a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00."

7

of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Thus, a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). Given this history, the issue before the court is whether plaintiff exhausted grievance 2543 before he filed the present action.

The record reflects that plaintiff filed this action on November 5, 2012, and that he exhausted his Step III appeal of grievance 2543 on January 7, 2013. The uncontested record establishes that plaintiff exhausted grievance 2543 more than one month after he filed the present action. Accordingly, defendant is entitled to summary judgment due to plaintiff's lack of exhaustion. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Freeman*, 196 F.3d at 645. *See also, Ross v. Duby*, No. 1:09-cv-531, 2010 WL 37322234 at *1 (Order Adopting Report and Recommendation) (W.D. Mich. Sept. 17, 2010) ("The Magistrate Judge correctly observed that the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires a prisoner to exhaust all administrative remedies prior to filing a § 1983 claim. Plaintiff did not do so, as he filed the complaint prior to receiving the 'Third Step Grievance Response,' as required by the Michigan Department of Corrections (MDOC). Now that the MDOC has responded to Plaintiff's Step III grievance, Plaintiff's administrative remedies have been exhausted. Regardless, the Court must dismiss Plaintiff's claim, as Plaintiff cannot perfect the exhaustion requirement during the pendency of his case.").

Finally, plaintiff contends that his Step III appeal was exhausted by default when the MDOC failed to respond to the appeal within 30 days. Plaintiff's contention is without merit. The MDOC Policy Directive (sometimes referred to as "PD") which addresses Step III appeals, PD 03.02.130, does not address a time frame for resolution of a Step III appeal. *See* PD 03.02.130 ¶¶

8

FF and GG (docket no. 9-2 at p. 7). However, another paragraph in PD 03.02.130 provides a 120-day time frame for completing the entire grievance process:

> Grievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant. The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II. An extension for a Step I or II response shall not exceed 15 business days unless the grievance falls within the jurisdiction of the Internal Affairs Division. The Grievance Coordinator shall immediately notify the grievant in writing whenever an extension has been approved; the extension also shall be noted in the grievance response.

PD 03.02.130 ¶ S.

Here, plaintiff filed his Step I grievance on August 14, 2012. *See* Grievance 2543 (docket no. 12-4 at p. 2). As a general rule, the Step III response should have been completed by December 12, 2012 (i.e., 120 days after plaintiff filed the Step I grievance). *See* PD 03.02.130 ¶ S. While the 120-day time frame referenced in PD 03.02.120 ¶ S is not mandatory, some courts view the time frame as a deadline for the MDOC to respond to a Step III grievance. *See, e.g., Sims v. Rewerts*, No. 07-12646, 2008 WL 2224132 (E.D. Mich. May 29, 2008). Even if this court viewed the 120-day time frame as a deadline, plaintiff still filed his complaint prematurely, because only 83 days expired between the time he commenced the grievance process on August 14, 2012, and the filing of his complaint on November 5, 2012.[2]

---

[2] The court notes that the MDOC's review of plaintiff's grievance was a little confusing, because it appeared to address the merits of the grievance while rejecting it on two different grounds. According to the Step I response, "[defendant] indicated that prisoner is not approved for kosher and should not be permitted access to the religious diet requested" and advised plaintiff that "your grievance is untimely." Grievance 2543 (docket no. 12-4 at pp. 2-3). The Step II appeal response stated that the Step I grievance was rejected because it attempted to grieve the content of a policy or procedure. Step II response (docket no. 12-4 at p. 11). This appears inconsistent with the Step I response, which addressed the merits and construed the grievance as untimely. In addition, the Step II investigation cited Policy Directive 05.03.150 and advised plaintiff to submit another request to eat from the religious menu after one year has elapsed from when he last applied and was denied. *Id.* The Step III response addressed the merits of plaintiff's grievance and

9

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant's motion for summary judgment (docket no. 8) be **GRANTED**, that plaintiff's motion for summary judgment (docket no. 11) be **DENIED**, and that this matter be **DISMISSED**.


Dated: June 11, 2013                    /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

provided in pertinent part as follows:

> "The response you received at Step I reflects that you request to be accommodated and allowed the Kosher meal was addressed by Special Activities Coordinator M. Martin and denied. The grievance identifier has been changed from "27b" to "20e." Indicating that your grievance was not rejected but denied. [sic] As there is no additional information or basis found for relief at Step III, the Step I decision is upheld."

Step III response (docket no. 12-4 at p. 15).